**Jack REESE, Frances Elaine Pidde, James Cichanofsky, Roger Miller, George Nowlin, and Ronald Hitt, on behalf of themselves and a similarly situated class, Plaintiffs,**

v.

**CNH AMERICA LLC, Defendant.**

No. 04–70592.

United States District Court,
E.D. Michigan,
Southern Division.

March 2, 2005.

Roger J. McClow, Samuel C. McKnight, Klimist, McKnight, Southfield, MI, for Plaintiffs.

Bobby R. Burchfield, Douglas G. Edelschick, Jason A. Levine, McDermott, Will, Washington, DC, Brian D. Sieve, Kathryn F. Taylor, Kirkland & Ellis, Chicago, IL, Norman C. Ankers, Honigman, Miller, Detroit, MI, for Defendant.

### OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

DUGGAN, District Judge.

Plaintiffs filed this lawsuit on February 18, 2004, pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs, on behalf of themselves and a Class of persons similarly situated, seek a declaratory judgment that they and their surviving spouses have a vested right to lifetime health care benefits from Defendant, CNH America LLC ("CNH"). Plaintiffs also seek damages and injunctive relief. Presently before the Court is Plaintiffs' motion for class certification.

Plaintiffs seek to certify a Class consisting of approximately 1450 retirees and surviving spouses of retirees from CNH's existing and closed facilities at locations in Wisconsin, Iowa, Illinois, Minnesota, and Mississippi, Plaintiffs define the Class as: (a) all former bargaining unit employees who retired under the Case Corporation Pension Plan for Hourly Paid Employees on or after July 1, 1994 (other than former employees eligible for or receiving retirement benefits under the deferred vested provisions of the Pension Plan); and (b) all surviving spouses of the retirees in (a). CNH was formerly known as the Case Corporation.

According to Plaintiffs, all members of the proposed Class are entitled to and seek lifetime, fully-paid health care benefits pursuant to the terms of Case's Insurance Plans. The Insurance Plans were negotiated by Case and the union representing Case's hourly employees the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW")as part of a series of collective bargaining agreements ("CBAs").

### I. Applicable Law and Analysis

#### A. Generally

Rule 23 of the Federal Rules of Civil Procedure sets forth two sets of prerequisites for class certification. Rule 23(a) states that a class action may be maintained "only if" the following four requirements are met:

> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). In addition, Rule 23(b) provides that an action only may be maintained as a class action if:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions af-

fecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ...

FED. R. CIV. P. 23(b).

### B. Numerosity (Rule 23(a)(1))

█ As the Sixth Circuit has stated, "[i]mpracticality of joinder is not determined according to a strict numerical test ..." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir.1976). However, in a case similar to the present matter involving a class of over 1000 retirees, the Sixth Circuit found the defendant's contention that the plaintiff had failed to address the impracticality of joinder "frivolous." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n. 1 (6th Cir. 1997). As the district court and court of appeals found in that case, "joinder of so many parties would be impracticable" and "[t]o reach this conclusion is to state the obvious." *Id.* This Court therefore concludes that joinder of approximately 1450 retirees and surviving spouses is impracticable and that the size of the Class fulfills the numerosity requirement.

### C. Commonality and Typicality (Rule 23(a)(2) and (3))

█ Plaintiffs contend that the commonality requirement is satisfied because CNH sent the same letter to the proposed class members announcing that it was filing a lawsuit to seek a judicial declaration that it had no obligation to provide them with health care benefits beyond the term of the current collective bargaining agreement.[1] According to Plaintiffs, all of the proposed class members are claiming rights to continuing, fully paid lifetime health care benefits arising from promises contained in similar CBAs and Insurance Plans.

CNH responds that the proposed class members retired under different CBAs,

group insurance or benefit plans, and summary plan descriptions ("SPDs") and they therefore are entitled to different legal rights. For example, CNH notes that the 1990 and 1995 CBAs incorporated "cap" agreements which purportedly limited CNH's liability with respect to retiree health care costs. CNH further contends that in the 1998 SPD, it reserved the right to modify or terminate retiree health care coverage; and in that year's Group Benefit Plan, CNH and the UAW agreed that retirees would have to participate in managed care plans that required them to contribute to their health care costs by making co-payments. CNH further notes that the 1998 CBA provides that employees hired after May 18, 1998, are ineligible for retiree health care benefits. Finally, CNH argues that a number of proposed class members retired after May 2, 2004, the date when the last CBA between it and the UAW expired.

CNH further argues that the named class representatives' claims are not typical of the claims of the individuals in the proposed Class because none of the named representatives retired after May 2, 2004, whereas 578 proposed class members retired after that date. Because these individuals retired after the last CBA expired, CNH argues that they cannot claim a vested right to retiree health care benefits. Additionally, CNH points out that five of the six named Plaintiffs reside in the Sixth Circuit, whereas the vast majority of the proposed class members live in the Seventh and Eighth Circuits.

CNH further notes that there is a split among these Circuits with respect to the law governing the interpretation of CBAs. *Compare UAW v. Yard–Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir.1983)(providing for "an inference that [retiree benefits] continue so long as the prerequisite status is maintained"), *with Rossetto v. Pabst Brewing Co.*, 217 F.3d

---

1. In fact on February 11, 2004, one week before Plaintiffs filed the present matter, CNH filed an action against the UAW International and eight UAW locals in the Eastern District of Wisconsin seeking a declaratory judgment that it could modify the health care benefits of individuals who retired on or after July 1, 1994. The defendants in that case subsequently filed a motion to dismiss, which the court granted. Notably, CNH then filed a motion to amend its complaint in order to add seven individual retirees as proposed class action defendants. CNH proposed a class consisting of the same individuals currently included in Plaintiffs' proposed Class—i.e. "[a]ll employees represented by the UAW who retired from their employment with CNH America LLC (or one of its predecessor entities ...) on or after July 1, 1994, and their surviving spouses." *See* Pls.' Reply Ex. B ¶ 68.

539, 543 (7th Cir.2000)(presuming "that an employee's entitlement to … benefits expires with agreement creating the entitlement, rather than vesting"). As a result of this split, CNH argues that there are no common issues of law applicable to the entire proposed Class and therefore Rule 23's commonality and typicality requirements are not satisfied.

Finally, CNH contends that class certification is inappropriate because the proposed Class includes individuals who retired *on* July 1, 1994, including named representative Ronald Hitt. As CNH points out, the class certified in *Yolton* already includes individuals who retired under the Case Corporation Pension Plan for Hourly Paid Employees on that date. CNH argues that individuals who retired on July 1, 1994, like individuals who retired before that date, are not participants in its health care benefit plan. CNH contends that these individuals' claims therefore are not typical of the proposed Class and that their inclusion renders the Class overbroad.

■ The commonality requirement "simply requires *a* common question of law or fact." *Bittinger,* 123 F.3d at 884 (citing *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993)). As the Sixth Circuit subsequently explained: " 'The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members.' " *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 422 (6th Cir.1998) (quoting *Forbush,* 994 F.2d at 1106). In *Forbush* the court found commonality even though the potential class was covered by four different pension plans. *Id.* Similarly in *Bittinger,* the Sixth Circuit found commonality where retirees sought guaranteed lifetime, fully-funded benefits, even though a series of different CBAs governed those benefits. *Bittinger,* 123 F.3d at 879 & 884. In a case related to this one, this

Court found commonality even though the plaintiffs' benefits derived from different collective bargaining agreements and insurance plans because the plaintiffs made one claim that the defendants wrongfully changed their health insurance benefits on a particular date by requiring them to contribute a substantial amount in order to retain those benefits. *See Yolton v. El Paso Tennessee Pipeline Co.,* No. 02–75164 Opinion and Order Granting Mot. for Class Certif. (E.D.Mich. September 3, 2004).

■ Typicality requires the representative to be a member of the class and share at least a common element of fact or law with the class. *Senter,* 532 F.2d at 525. Like the test for commonality, the test for typicality is not demanding and the interests and claims of the various plaintiffs need not be identical.[2] *Bittinger,* 123 F.3d at 884 (citing *Forbush,* 994 F.2d at 1106). The Sixth Circuit has explained the typicality requirement as follows:

> "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."

*In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996)(quoting 1 HERBERT B. NEWBERG and ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 3–13, at 3–76). A representative's claim is typical despite the fact that the evidence relevant to his or her claim varies from other class members, some class members would be subject to different defenses,

2. The Sixth Circuit has recognized that the commonality and typicality requirements "tend to merge," and that "[b]oth serve as guideposts for determining whether … maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Rutherford v. City of Cleveland,* 137 F.3d 905, 909 (6th Cir.1998)(quoting *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982)).

and the members may have suffered varying levels of injury. *See Bittinger,* 123 F.3d at 884–85.

The Court concludes that the commonality and typicality requirements necessary for class certification are satisfied in this case. The named representatives, like the proposed class members, claim that CNH is wrongfully threatening to modify the level of health insurance benefits to which they allegedly are entitled under the Case Pension Plan for Hourly Paid Retirees. This claim is universally based on the same legal theory that the relevant agreements provide retirees and surviving spouses of retirees fully-funded, lifetime health care benefits. The factual and legal variations noted by CNH do not render the proposed Class unworkable; nor do they demonstrate a lack of commonality and/or typicality.

With respect to the "cap" agreements, there is a dispute (as there is in *Yolton*) whether the UAW and Case intended for the agreements to limit retiree benefits or whether the agreements were executed merely for accounting purposes. If the agreements only were intended to serve the latter purpose, they do not render atypical or uncommon the claims of the individuals who retired while a cap agreement was in effect. But even if the Court ultimately determines that the agreements effectively capped retiree benefits, the Court can, at that time, create a sub-class consisting of those individuals whose rights were impacted.

With respect to the addition of "reservation of rights" provisions in the 1995 and 1998 SPDs, the Court is uncertain at this stage in the proceedings whether the language of those provisions affects the legal rights of proposed class members who retired under those CBAs.[3] The Court eventually may conclude that the retirees' rights to

health care benefits did not vest because this language announces a unilateral right by CNH to terminate coverage without regard to existing or future CBAs, as was the case in *Maurer v. Joy Technologies, Inc.,* 212 F.3d 907 (6th Cir.2000). Alternatively, the Court may conclude that the language in the SPDs is sufficiently distinct from the reservation of rights provision in *Maurer* that the retirees' rights to health care benefits vested, as was the case in *McCoy v. Meridian Automotive Systems, Inc.,* 390 F.3d 417 (6th Cir. 2004). If the Court ultimately determines that *Maurer* controls, it may create subclasses at that time.

Similarly, the Court finds that the commonality and typicality requirements are satisfied despite the fact that some individuals retired under agreements requiring them to participate in managed health care plans. While members of the proposed Class may be entitled to coverage under different types of health insurance plans, the differences in those plans relate to the type of coverage members are entitled to receive for example, what types of services are covered, whether deductibles apply, and whether co-payments must be made. These differences are not relevant to the Plaintiffs' claim that the proposed class members are entitled to have CNH pay the full premium cost of their retiree health care plan, regardless of what type of plan that may be. It is CNH's threat to stop paying the full cost of this premium that is at issue in this lawsuit.

The addition of a provision in the 1998 agreement stating that individuals hired after May 18, 1998, are not entitled to retiree health care coverage does not appear relevant to this case, as Plaintiffs state that it is "unlikely" that any individual within the proposed class was hired after that date.[4] As to

---

**3.** In fact, the Court believes that it would be inappropriate at this stage of the proceedings for it to determine the impact of those provisions on the merits of Plaintiffs' claim that individuals who retired pursuant to the 1995 and 1998 CBAs are entitled to vested retiree health care benefits. *See Fox v. Massey–Ferguson, Inc.,* 172 F.R.D. 653, 660 (E.D.Mich.1995) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974)) (stating that in reaching its decision on a motion for class certification "the court should not consider the

merits of the action … Rather, the court must accept all of the factual allegations within the complaint as being correct and draw all reasonable inferences from these facts.")

**4.** To the extent that there are any retirees who were hired after that date, Plaintiffs indicate that they do not seek to represent them in this action. *See* Pls.' Reply at 6. The Court therefore will specifically exclude those individuals from the Class.

CNH's argument that 578 of the proposed class members could not expect vested retiree health care coverage because they retired after the final CBA expired on May 2, 2004, Plaintiffs point out that at least 500 of these employees retired pursuant to a plant shutdown agreement which specifically extended the 1998 CBA until the plant closed.[5] *See* Pls.' Reply Ex. F & Ex. G at 16. According to Plaintiffs, this plant shutdown agreement further provided that employees who retired as a result of the plant closing would receive special early retirement benefits, including "Retiree Insurances" under the Group Benefits Plan. Thus this factual distinction does not persuade the Court that Plaintiffs' motion for class certification should be denied.

With respect to individuals who retired on July 1, 1994, like Mr. Hitt, it is not clear from the parties' arguments whether those individuals should be included in the *Yolton* Class or in the Class proposed in this action. Plaintiffs' inclusion of these individuals in the proposed Class, however, does not result in an unworkable or overbroad Class. Instead, when it becomes clear in which class these July 1 retirees belong, the Court can redefine the *Yolton* or *Reese* Class so that only one class includes those individuals.

Finally, common issues of law predominate regardless of the fact that the proposed class members reside in three different judicial districts. While there may be a split in certain aspects of the law among those districts, the issues in this case only will be decided according to the federal common law as interpreted under Supreme Court and Sixth Circuit precedent. *See Rossetto,* 217 F.3d at 541–42 (stating that the issue of whether retiree health care benefits vest must be decided as a matter of federal common law developed under the authority of ERISA and the LMRA as interpreted by the law governing the Circuit in which the court sits). As Plaintiffs point out, district courts routinely apply the law of the Circuit in which they sit in retiree health care cases despite the fact that the plaintiff-retirees worked and/or live in other Circuits. *See UAW v. Aluminum Co. of Am.,* 932 F.Supp. 997, 1000 n. 1 (N.D.Ohio 1996); *Fox v. Mas-*

*sey–Ferguson, Inc.,* 172 F.R.D. at 659 n. 8; *Golden v. Kelsey–Hayes,* 845 F.Supp. 410, 411 (E.D.Mich.1994); *see also McCoy,* 390 F.3d at 421 (applying *Yard–Man* to interpret a CBA governing medical benefits of retirees of plant in Illinois).

## D. Adequacy of Representation (Rule 23(a)(4))

In *Senter,* the Sixth Circuit identified two criteria for determining whether this prerequisite is satisfied: "1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute interests of the class through qualified counsel." *Senter,* 532 F.2d at 525 (citation omitted). As discussed above, the Court finds that the named representatives have common interests with the members of the proposed Class. With respect to the second criteria, CNH has not challenged the competency or desire of Plaintiffs or their counsel to prosecute the interests of the Class, nor does the Court believe that it would have any basis to do so.

## E. Rule 23(b)

Plaintiffs seek class certification pursuant to Rule 23(b)(1) or (2). The Court finds that certification under either subsection is appropriate. As to Rule 23(b)(1), there is a risk of inconsistent results if the 1450 retirees and surviving spouses of retirees file individual lawsuits to challenge CNH's threatened modification of their health insurance benefits. As a result, CNH could be subject to incompatible standards of conduct paying the full-costs of benefits for some plaintiffs but not others. As to Rule 23(b)(2), CNH is threatening to cease paying the full-costs of the named Plaintiffs' and proposed class members' health insurance benefits on the ground that those benefits did not vest and are thereby modifiable. As a result, injunctive and/or declaratory relief would be appropriate with respect to the Class as a whole.

---

**5.** Again, the Court can create a subclass if the parties subsequently discover that any of the remaining 78 post-May 2, 2004 retirees retired

without any contractual promise of continued health care coverage.

For the above reasons, the Court finds that the requirements for class certification set forth in Rule 23 are satisfied. Accordingly,

IT IS ORDERED, that Plaintiffs' motion for class certification is GRANTED;

IT IS FURTHER ORDERED, that the Court certifies a Class, pursuant to Rule 23(b)(1) and (2), consisting of the following:

All former bargaining unit employees who retired under the Case Corporation Pension Plan for Hourly Paid Employees on or after July 1, 1994 (other than former employees eligible for or receiving retirement benefits under the deferred vested provisions of the Pension Plan and former employees hired after May 18, 1998) and all surviving spouses of those former bargaining unit employees.