In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2324

UNITED MINE WORKERS, et al.,

*Plaintiffs-Appellants*,

*v.*

BRUSHY CREEK COAL COMPANY, et al.,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04-cv-4249-JPG—**J. Phil Gilbert**, *Judge*.

———————

ARGUED SEPTEMBER 28, 2007—DECIDED OCTOBER 18, 2007

———————

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*.  The United Mine Workers union, along with 63 retired coal mine workers, appeals from the grant of summary judgment to the Brushy Creek Coal Company, the workers' former employer. The plaintiffs argue that they are entitled by the Taft-Hartley Act and ERISA to a trial to try to prove that a health plan negotiated by the parties in 1998 guaranteed the company's workers lifetime health benefits that the company could not unilaterally reduce even after the collective bargaining agreement that had created the plan expired. If the

district judge was correct that the plan unambiguously does not grant the plaintiffs any entitlements after the agreement expired, the union is not entitled to a trial. E.g., *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 547 (7th Cir. 2000); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996).

The defendant overargues its case by contending that for the plaintiffs to prevail the plan must "clearly" demonstrate an entitlement to lifetime benefits. A plan that does not specify the duration of benefits is presumed not to grant benefits beyond the end of the agreement creating the plan. *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 632 (7th Cir. 2004); *Rossetto v. Pabst Brewing Co., supra*, 217 F.3d at 543; see also *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994). But in this case benefits "for life" were promised and the question is whether the promise was withdrawn elsewhere in the documentation constituting the parties' overall agreement. As to that question no presumption is warranted. *Bland v. Fiatallis North America, Inc.*, 401 F.3d 779, 784 (7th Cir. 2005).

Brushy bought a coal mine in Galena, Illinois, in 1991. At first it adopted the nationwide collective bargaining agreement with the UMW to which the company that sold the mine to Brushy had been a party. Later it negotiated two successive individual collective bargaining agreements with the union. But in 1998, upon the expiration of the second agreement, Brushy and the union executed a "memorandum of understanding" that brought Brushy back under the nationwide collective bargaining agreement for the next three years. The memorandum also created the ERISA welfare plan that promised the mine's employees the health benefits at issue in this case. At the end of 1999, however, Brushy closed the mine, and after the three years during which it had agreed to be bound by

the nationwide collective bargaining agreement were up in 2001 it made changes in the health plan to which the union objected. This suit challenging the changes is on behalf of employees who retired while Brushy was bound by the nationwide agreement. So there are three key documents to interpret: the nationwide collective bargaining agreement, the memorandum of understanding, and the health plan.

The collective bargaining agreement entitles employees who retire during its term, such as the 63 individual plaintiffs, to health benefits "for life." The memorandum of understanding creates the health plan that lists the benefits to which the employees are entitled for life. But the plan, in turn, expressly entitles Brushy to terminate it or alter its terms, "subject to the Collective Bargaining Agreement," that is, the nationwide collective bargaining agreement. That would make a quick end to the plaintiffs' claim were it not for a provision of that agreement which states (as it has since 1993) that "the benefits and benefit levels provided by an Employer under its Employer plan are established for the term of this Agreement only, and may be jointly amended or modified in any manner at any time after the expiration or termination of this agreement."

The first clause of the provision, ending in the word "only," reinforces the right of termination or alteration that the health plan confers on Brushy; it makes the benefits terminate when the agreement expires. But the union argues that the second clause, and in particular the words "after the expiration or termination of this agreement," imply that the benefits persist beyond the end date of the collective bargaining agreement, that is, beyond 2001. For if the benefits did not outlive the agreement, why

would the parties have to agree to modify or amend them after that date? There would be nothing to modify or amend.

As the district judge noted, however, another provision of the nationwide collective bargaining agreement states that "the specific provisions of the plans will govern in the event of any inconsistencies between the general description and the plans." The health plan is one of the "plans" to which this provision refers and the "jointly amended" clause quoted above on which the plaintiffs found their claim appears in the part of the nationwide agreement captioned "general description of the health and retirement benefits." Were there no "jointly amended" clause there would be no inconsistency between the termination provision in the health plan and the nation-wide agreement; and since it is only in the general description that the clause appears, the clause must be disregarded to eliminate the inconsistency.

This point can be grasped more clearly by supposing that the benefits provision in the collective bargaining agreement stated flatly that "retirees are entitled to benefits for their lifetime even if they outlive this and any successor collective bargaining agreement." The provision would then be clear. But it would be inconsistent with the provision in the health plan itself entitling the coal company to terminate or alter the plan at any time; and so, being at once inconsistent with the plan and contained in the general-description part of the collective bargaining agreement, it would have no force. The fact that the provision does not clearly confer lifetime benefits, but is ambiguous, cannot bolster the union's position. And it makes sense that the detailed provisions of the health plan would prevail over inconsistent language in a col-

lective bargaining agreement that deals with a variety of other subjects, such as notice or change of ownership, that might pertain to Brushy's right to change the plan.

In short, the "subject to" clause in the health plan takes us to the collective bargaining agreement, where we find that a conflict between the general description in the agreement and the health plan is to be resolved in favor of the plan, and so we go back to the plan and find that the plan administrator is explicitly authorized to terminate, modify, etc., the plan.

This interpretation might seem to make the grant of lifetime benefits in the collective bargaining agreement and the health plan illusory. But that is not true. *Vallone v. CNA Financial Corp., supra*, 375 F.3d at 633; *UAW v. Rockford Powertrain, Inc.,* 350 F.3d 698, 703-04 (7th Cir. 2003); *Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 99-100 (2d Cir. 2001); *Sprague v. General Motors Corp.,* 133 F.3d 388, 401 (6th Cir. 1998). As long as the health plan is in effect, the retirees are entitled to benefits until they die. Indeed, as far as we know, they are still receiving benefits, albeit at a reduced level. If the plan did not create benefits "for life," it would be unclear when the benefits ended. Terminable benefits for life are benefits that go on regardless of the age of the worker or how long ago he retired, but that cease if the plan conferring those benefits ends.

That is not quite the end of the case, because a contract that is clear on its face can be shown by objective evidence to be ambiguous (to contain, in the language of contract law, a "latent" as distinct from a "patent" ambiguity), e.g., *ConFold Pacific, Inc. v. Polaris Industries, Inc.*, 433 F.3d 952, 955-56 (7th Cir. 2006); *Connect Communications Corp. v. Southwestern Bell Telephone, L.P.*, 467 F.3d 703, 709-

10 (8th Cir. 2006), as in the much-cited case of *Raffles v. Wichelhaus*, 2 H. & C. 906, 159 Eng. Rep. 375 (Ex. 1864). The defendant agreed to ship cotton to the plaintiff on the ship *Peerless*. But there were two ships of that name and it was unclear to which one the contract referred. The contract was clear on its face; it was the fact that there were more than one ship of the same name, a fact not apparent from reading the contract yet established by objective evidence rather than by the self-serving testimony of an interested party, that made the contract ambiguous. And once a contract is shown to be ambiguous, evidence outside the language of the contract itself becomes admissible to disambiguate the language. *Rossetto v. Pabst Brewing Co., supra*, 217 F.3d at 546-47; *Charter Oil Co. v. American Employers' Ins. Co.,* 69 F.3d 1160, 1168-69 (D.C. Cir. 1995).

The plaintiff's 50-page brief devotes only three and a half pages to trying to establish the existence of a latent ambiguity. The evidence consists of cash offers that Brushy made to its employees after the mine closed in 1999 but before the company modified the health plan. The cash was offered "in lieu of the lifetime benefits provided pursuant to the collective bargaining agreement." (Some of the offers use a different but equivalent wording.) The timing is critical. When the offers were made, the plaintiffs *were* entitled to lifetime benefits, and at the level fixed in the health plan, because the company had not yet exercised its right to modify the plan. Having closed the mine, the company was unlikely to want to continue providing health benefits at the same level as when the mine was operating and generating revenue. But it knew that if it terminated or modified the health plan, it would be inviting a lawsuit—this lawsuit. Naturally it wanted to settle with as many of the employees as possible

before a lawsuit was brought, and perhaps by settling avoid being sued at all. The making of the offers was an acknowledgment of legal jeopardy but not an acknowledgment that the benefits contract formed by the nationwide collective bargaining agreement, the memorandum of understanding, and the health plan was ambiguous, for what is more common than a breach of contract suit that ends in a ruling that the contract unambiguously demonstrates the absence of a breach?

The offers were not, so far as appears, offers in settlement of claims, within the meaning of Rule 408 of the Federal Rules of Evidence. If they had been, they would be inadmissible in evidence in this case, as the union seeks to use them as a confession of liability. *Alexander v. City of Evansville*, 120 F.3d 723, 728-29 (7th Cir. 1997). But the spirit of the rule would be affronted by using offers intended to head off litigation as evidence that the offerees had a triable claim against the offeror, which is what the plaintiffs are trying to do. In any event, although conduct in the performance stage of a contract can cast light on the parties' understanding of what the contract required, the cash offers by the coal company were not even arguably required by the contract. There is nothing to suggest that they were anything more than an attempt to head off a dispute.

AFFIRMED.

A true Copy:

     Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*