**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLAYTON R. POORE; DOROTHY ANN
TESKE; SHARON RIGGS; DENNIS
HAWKE; MERRIE LOU HAWKE; JOHN
ANDERSON; BARBARA ANDERSON;
ROBERT ELLEDGE; MARY ELLEDGE;
ROBERT POSCHWATTA, MARIE
POSCHWATTA; JAMES GUNDIFF;
MARIE GUNDIFF; JERRY CUSICK;
SELMA CUSICK; HAROLD HUIRAS;
LINDA HUIRAS; OWEN ENEVOLDSEN;
and DONNA ENEVOLDSEN,
              *Plaintiffs-Appellants,*

                  v.

SIMPSON PAPER COMPANY, a
Washington corporation,
              *Defendant-Appellee.*

No. 05-36060

D.C. No.
CV-03-00525-HA

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted
December 5, 2007—Portland, Oregon

Filed May 21, 2009

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain

6025

**COUNSEL**

Thomas K. Doyle, Bennett, Hartman, Morris & Kaplan, Portland, Oregon, argued the cause for plaintiffs-appellants and filed briefs.

Douglas S. Parker, Preston Gates & Ellis LLP, Anchorage, Alaska, argued the cause for defendant-appellee and filed a brief. Douglas S. Parker and Michael F. McCabe, Littler Mendelson, Portland, Oregon, filed a supplemental brief.

Jay E. Sushelsky, AARP Foundation Litigation, Washington, DC; Barbara A. Jones, AARP Foundation Litigation, Pasadena, California; and Melvin R. Radowitz, AARP, Washington, DC, filed an amicus brief in support of plaintiff-appellants' petition for rehearing en banc for amicus curiae AARP.

Monique Olivier,The Sturdevant Law Firm, San Francisco, California filed an amicus brief in support of plaintiff-appellants' petition for rehearing en banc for amicus curiae California Employment Lawyers Association.

**ORDER**

The opinion filed on September 22, 2008 and appearing at 544 F.3d 1062 (9th Cir. 2008), is withdrawn. Pursuant to Gen-

eral Order 5.3.a, a new opinion is filed contemporaneously with this order. With the withdrawal of the prior opinion, the petition for rehearing en banc is denied as moot. Subsequent petitions for rehearing and for rehearing en banc may be filed.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide a dispute about retirement benefits.

### I

Simpson Paper Company ("Simpson") owned and operated the Evergreen Mill in West Linn, Oregon, from 1990 until 1996, when it closed for economic reasons. Plaintiffs are former workers in the mill, who retired at ages over 55 but under 65, and their dependent spouses (collectively referred to as "early retirees" or "retirees").

The Association of Western Pulp and Paper Workers ("the Union") represented the hourly employees at the mill, including the early retirees, from the 1970s through the time of the mill's closure. Three collective bargaining agreements ("CBAs") were in force during the time Simpson owned the mill: 1990-93, 1993-95, and 1995-2001. Simpson and the Union negotiated a closure agreement in 1996, which terminated the 1995-2001 CBA.

The first CBA incorporated by reference a benefit booklet, as follows: "Subject to all the provisions of the Benefit Plan Booklet the Company will provide for each eligible employee and each eligible dependent the coverages agreed to in its labor agreement dated November 27, 1990." The incorporated booklet provided that early retirees could continue medical coverage that existed at the time of retirement and that they

could "change coverage at the annual open enrollment on the same basis as active employees." The booklet further provided that such coverage would continue until the retiree "bec[ame] eligible for Medicare, attain[ed] age 65, or until . . . death, whichever occurs first." A similar extension period was provided for continuation of medical coverage for the retirees' spouses. During the time that such coverages continued, the cost was "paid on the same basis as active employees." Finally, the benefits booklet specifically reserved to Simpson the "right to alter, amend, delete, cancel or otherwise change" the welfare plan benefits "at any time, *subject to negotiation with the Union*." (Emphasis added.)

The latter two CBAs likewise incorporated the benefits booklet. Such contracts stated that, "[u]nless otherwise specified, all participants covered by the health care plans will be subject to the same level of contributions as active employees and to the same health care plan provision changes which take effect from time to time." Though there were slight changes to the benefits booklet over the years, the benefits Simpson provided therein remained substantially the same.

Simpson's closure agreement, negotiated with the Union, provided that

> [e]mployees who are curtailed as a result of the closure and begin receiving their Simpson pension benefits as of the first of the month immediately following curtailment, will be eligible for retiree medical coverage in accordance with the provisions of the Benefits Plan Booklet.

Then-active employees received a "Termination Checklist" at meetings just before the closure. It contained essentially the same provision just quoted. Neither the closure agreement nor the information given to employees who remained employed until closure referenced early retiree or dependent spouse benefits for those who *already* had retired.

In 2002, Simpson notified all retirees that it intended to phase out, and eventually to eliminate, retirement health benefits. On July 1, 2004, it carried out such intention and stopped providing retirement health benefits. The present action followed.

The early retirees assert that Simpson breached its duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, by terminating health benefits without having obtained the Union's agreement or having bargained to impasse. They also assert breach of contract claims under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), arguing Simpson violated its obligations under the CBAs. The district court granted summary judgment to Simpson, concluding that the early retirees have no vested right to the benefits they seek. This timely appeal followed.

## II

The parties do not question our jurisdiction; however, we have an "independent obligation" to ensure that such exists. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (per curiam).

## A

**[1]** To establish standing to sue under ERISA, the early retirees must show that they are plan "participants." *Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388, 392 (9th Cir. 1998). ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989), the Supreme Court held that former employees satisfy this definition if they have " 'a reasonable expectation of returning to covered employment' or . . . 'a colorable claim' to vested benefits." *Id.* at 117 (quot-

ing *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986), (abrogated on other grounds by *Kayes v. Pac. Lumber Co.*, 51 F.3d. 1449, 1454 (9th Cir. 1995)).

**[2]** The Supreme Court recently clarified this point in *LaRue v. DeWolff, Boberg & Associates*, 128 S. Ct. 1020, 1026 n.6 (2008), stating that a "plan 'participant,' as defined by . . . 29 U.S.C. § 1002(7), may include a former employee with a colorable claim for benefits." In support of this proposition, the opinion cites *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007), a case which notes that the *Firestone Tire* Court "glossed 'benefit' in section 1002(7) as 'vested benefit,' which has caused the lower courts a good deal of angst." *Id.* at 806. "But in context," the Seventh Circuit continued, "it is apparent that all the Court meant was that the former employee had to have an entitlement — had to show that had it not been for the trustees' breach of their fiduciary duty he would have been entitled to greater benefits than he received." *Id.*

We are satisfied that *LaRue* remedied the "angst" noted by the Seventh Circuit by loosening the requirement that the claimed benefits be "vested," at least insofar as vested means permanently fixed and unalterable. This understanding is supported by two Supreme Court decisions decided between *Firestone Tire* and *LaRue*.

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), involved a health plan for former employees, who had no unalterable rights in the plan. *See id.* at 75 (noting that the plan was maintained "voluntarily," rather than out of obligation); *see also id.* at 78 (because ERISA does not establish any minimum vesting requirements for health plans, "that [the employer] amended its plan to deprive respondents of health benefits is not a cognizable complaint under ERISA.") However, the plan in *Curtiss-Wright* included the following language: " 'The Company reserves the right at any time and from time to time to modify or amend, in whole or in part,

any or all of the provisions of the Plan.' " *Id.* at 77. Some former employees sued under 29 U.S.C. § 1132, the civil enforcement provision of ERISA, claiming that the plan did not contain an amendment procedure as required by ERISA and that a purported amendment was thus void *ab initio*. The Court determined that the provision for amendment by "[t]he Company" stated such a procedure, and remanded for a determination of whether it had been followed by the employer. *Id.* at 85.

**[3]** The decision in *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Railway*, 520 U.S. 510 (1997), is also instructive. There, the Court held that the protections of 29 U.S.C. § 1140 extend to those with non-vested rights. Critically, the Court noted, Congress used the term "plan" in the statute — a term used to denote both those that must vest and those that do not vest unless by contract. If Congress had intended to limit § 1140's protection to holders of vested rights, it could have spoken in terms of "pension plan[s]," which must vest, or of "nonforfeitable" rights. *Id.* at 514-15 (quoting 29 U.S.C. § 1002 (defining terms used in ERISA)). Likewise, as is the situation here, if Congress intended to limit the right to sue under § 1132 to vested right-holders, it would have said so instead of granting it to "participant[s]" (a defined term which includes both vested and non-vested persons).

In its supplemental briefing, Simpson Paper argues that *Curtiss-Wright* and *Inter-Modal* are inapplicable because they do not address § 1132. But this argument fails to recognize that civil suits by participants necessarily arise out of that section. Nor does Simpson Paper explain why "participants" should be read to find jurisdiction over claims made under certain sections of ERISA, but not others. Moreover, the dispute here — essentially a claim that, contrary to the plan, Simpson Paper stopped paying benefits — is quite similar to the dispute in *Curtiss-Wright*.

**[4]** We are satisfied that the early retirees need not show that their benefits are vested in the way that pension benefits are vested. Under *LaRue*, they have shown enough.

B

**[5]** The retirees also assert breach of contract claims under the LMRA. The LMRA confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). As a general rule, where the contract at issue has expired, the parties are "released . . . from their respective contractual obligations" and any dispute between them cannot be said to arise under the contract. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 206 (1991). An exception to this general rule exists, however, where the parties' dispute concerns a "right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.; see also Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 249 (1977) ("[T]here is . . . no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired. . . . The dispute therefore, although arising *after* the expiration of the collective-bargaining contract, clearly arises *under* that contract." (citation, footnote, and internal quotation marks omitted)).

**[6]** The retirees here have stated at least a colorable claim that they have a right to benefits which survived the expiration of the remainder of the agreement. Although the claim may fail on the merits, it need not be meritorious to establish subject-matter jurisdiction. It need only be non-frivolous. *See, e.g., Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974) (dismissal for lack of subject-matter jurisdiction appropriate when the purported federal claim is "so

insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy."). Accordingly, jurisdiction under the LMRA exists.

## III

### A

**[7]** Retirees assert that they have nonforfeitable rights, while Simpson Paper claims that it could terminate the benefits at any time. Neither is correct. The plan document states that it may be modified "subject to negotiation with the Union." Retirees have argued, as an alternative theory, that there was never any negotiation with the Union. The contractual term is ambiguous: it could mean negotiation to impasse, see 29 U.S.C. § 158(a)(5) & (d), or something less. Because resolving the ambiguity requires consideration of disputed facts, the grant of summary judgment was inappropriate. And, of course, the retirees are entitled to try their claim under section 301 of the LMRA to a jury.

**[8]** We have noted that the retirees' claim is similar to the claim made in *Curtiss-Wright*. Although they did not cite 29 U.S.C. § 1102, the statute at issue in that case, they were not required to. There, it was asserted that, in violation of that section, the employer had failed to create an amendment procedure. Failure to cite § 1102 is not fatal in this case, which at its heart involves an assertion that Simpson Paper simply did not follow the terms of the plan documents.

### B

Retirees assert that Simpson Paper violated its fiduciary responsibilities by not advising them of the possibility of plan termination during their exit interviews. In support, they rely on *Mullins v. Pfizer, Inc.*, 23 F.3d 663 (2nd Cir. 1994) and *Pocchia v. NYNEX Corp.*, 81 F.3d 275 (2nd Cir. 1996). How-

ever, these cases do not support their theory. Both cases involved potential changes in early retirement benefits which were under active and serious consideration by the company. In *Mullins*, the employer stoutly denied that any changes in early retirement plans were being considered. The court held that affirmative material misrepresentations about whether an increase in early retirement benefits was under consideration was actionable. *Pocchia* extended *Mullins* to state that an employer need not disclose proposed changes before they are adopted. *Pocchia*, 81 F.3d at 278.[1]

[9] Here, there is no evidence in the record to suggest that Simpson Paper was considering changes in retiree benefits at the time that representations were made to the early retirees. Indeed, the possibility of plan termination had already been disclosed in the plan documents. Under the early retirees' preferred legal theory, their claim fails, and they assert no other. Any further argument about Simpson Paper's alleged failure to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a), is accordingly waived.

C

[10] "An ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, reasonable and detrimental reliance upon the representation and extraordinary circumstances." *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (per curiam) (citing *In Re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 907 (3d Cir. 1995)). The retirees have offered no argument to counter the district court's conclusion that no exceptional circumstances were present. Their estoppel claim accordingly must fail as well.

---

[1] It is the law of this circuit that "when a plan participant inquires about potential plan changes, an employer-fiduciary has a duty to provide complete and truthful information about any such changes then under serious consideration." *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1045 (9th Cir. 2000) (en banc).

IV

**[11]** The remaining contentions of both sides are without merit. Because it is unclear whether Simpson Paper negotiated as required by the CBA, we reverse in part the grant of summary judgment in its favor and remand. We affirm the grant of summary judgment as to the early retirees' claims of breach of fiduciary duty and estoppel. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**