**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCES ALDAY; JANICE ALESHIRE;
MARK AGRAVES; FRANK ARMENTA;
MILORAD ARNOKOVICH; LEONARD
BECWAR; JOAN BERNAL; IRMA
BRAVO; JANE BRAVO; THURMAN
BROOKS; HOWARD BROWNSTEIN;
MARLENE BURGER; JAMES BYRNES,
SR.; DAVID CARLESS; JOE
CARRASCO; LIPA CARRASCO;
ROSEMARY CESARE; ERNIE CORRAL;
RACHEL DELACRUZ; JOAN
DONNELLY; PATRICK ECCLES; LUCY
ESPARZA; REBECCA FEDERICO; JERRY
FITCH; DICKIE FLORES; ALICE
GALLARDO; PATRICIA GARCIA;
SANDRA GARY; RICHARD GEHRKE,
SR.; DONALD GENUNG; RONALD
GEUDER; KATHLEEN GLASER;
GEORGE GONZALES; JEANETTE GRAY;
JOSE GUTIERREZ; JEANNE HARRIS;
ROBERT HARRIS; GLORIA
HERNANDEZ; ELOISE HERRAN;
GERALD HOTCHKISS; SHARON
HUDSON; JOHN JACKSON; JOE
KEIFLIN; LARRY KIDNEY; CLARE
L'ARMEE; DAVID LILLIE;

13497

LESLIE LLAMAS; ERIC MARTINEZ;
JIMMIE MARTINEZ; MARIA
MARTINEZ; MARY MCKENNA;
PATRICIA MCPHERON; JOSEPHINE
MEADOWS; ROY MESA; BILL
MEYER; THOMAS MILLER; MICHAEL
MINCHEFF; CARMEN MIRANDA;
LARRY MITCHELL; HENRY
MODRZEJEWSKI; LOIS MOORE; HEIDE
MORAN; GRACE MORENO; ABDO
MORGAN; CARLOS OCHOA; FELICITA
ORTEGA; JUAN ORTIZ; RICHARD
PAYNE; LARRY POLLOCK; CLIFTON
PRICE; JACK QUATTLEBAUM; IGNACIO
REA; JACK ROBINSON; BRUCE
ROGERS; JENNIE SAENZ; ROBERT
SAGER; ESPERANZA SALTZBERRY;
RUSSELL SCIRA; JEANNIE SIDES;
DAVID SIMS; JEROLD SMALL; JAMES
SMITH, JR.; JULIA SOLTERO;
MICHAEL SOMMER; GINA SOTO;
DONALD SPROSS; RONALD
STALLINGS; DONALD STRAUSS; JAMES
SULLIVAN; MARY TERPENING; JOHN
TERRY; DONALD ULLIMAN; MARTHA
VILLA; STEVE VUICH; LAWRENCE
WICKERSHAM; MARY WILLIAMS;
GEORGE ZUKOWSKI,
                    *Plaintiffs-Appellees,*

v.

RAYTHEON COMPANY, a Delaware
corporation,
                    *Defendant-Appellant.*

No. 08-16984

D.C. No.
4:06-cv-00032-DCB

MARK AGRAVES; RONALD GEUDER;
CLARE L'ARMEE; DAVID LILLIE,
                    *Plaintiffs-Appellants,*

          and

FRANCES ALDAY; JANICE ALESHIRE;
FRANK ARMENTA; MILORAD
ARNOKOVICH; LEONARD BECWAR;
JOAN BERNAL; IRMA BRAVO; JANE
BRAVO; THURMAN BROOKS;
HOWARD BROWNSTEIN; MARLENE
BURGER; JAMES BYRNES, SR.; DAVID
CARLESS; JOE CARRASCO; LIPA
CARRASCO; ROSEMARY CESARE;
ERNIE CORRAL; RACHEL DELACRUZ;
JOAN DONNELLY; PATRICK ECCLES;
LUCY ESPARZA; REBECCA FEDERICO;
JERRY FITCH; DICKIE FLORES; ALICE
GALLARDO; PATRICIA GARCIA;
SANDRA GARY; RICHARD GEHRKE,
SR.; DONALD GENUNG; KATHLEEN
GLASER; GEORGE GONZALES;
JEANETTE GRAY; JOSE GUTIERREZ;

JEANNE HARRIS; ROBERT HARRIS;
GLORIA HERNANDEZ; ELOISE
HERRAN; GERALD HOTCHKISS;
SHARON HUDSON; JOHN JACKSON;
JOE KEIFLIN; LARRY KIDNEY; LESLIE
LLAMAS; ERIC MARTINEZ; JIMMIE
MARTINEZ; MARIA MARTINEZ; MARY
MCKENNA; PATRICIA MCPHERON;
JOSEPHINE MEADOWS; ROY MESA;
BILL MEYER; THOMAS MILLER;
MICHAEL MINCHEFF; CARMEN
MIRANDA; LARRY MITCHELL; HENRY
MODRZEJEWSKI; LOIS MOORE; HEIDE
MORAN; GRACE MORENO; ABDO
MORGAN; CARLOS OCHOA; FELICITA
ORTEGA; JUAN ORTIZ; RICHARD
PAYNE; LARRY POLLOCK; CLIFTON
PRICE; JACK QUATTLEBAUM; IGNACIO
REA; JACK ROBINSON; BRUCE
ROGERS; JENNIE SAENZ; ROBERT
SAGER; ESPERANZA SALTZBERRY;
RUSSELL SCIRA; JEANNIE SIDES;
DAVID SIMS; JEROLD SMALL; JAMES
SMITH, JR.; JULIA SOLTERO;
MICHAEL SOMMER; GINA SOTO;
DONALD SPROSS; RONALD
STALLINGS; DONALD STRAUSS; JAMES
SULLIVAN; MARY TERPENING; JOHN
TERRY; DONALD ULLIMAN; MARTHA
VILLA; STEVE VUICH; LAWRENCE
WICKERSHAM; MARY WILLIAMS;
GEORGE ZUKOWSKI,

*Plaintiffs,*

v.

RAYTHEON COMPANY, a Delaware
corporation,

*Defendant-Appellee.*

No. 08-16985

D.C. No.
4:06-cv-00032-DCB

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted
February 9, 2010—San Francisco, California

Filed September 7, 2010

Before: David R. Thompson, M. Margaret McKeown and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Thompson

**COUNSEL**

Robert Gregory, Mesa, Arizona, for the plaintiffs/appellees/appellants.

Christopher Landau, Washington, DC, for the defendant/appellant/appellee.

---

**OPINION**

THOMPSON, Senior Circuit Judge:

The plaintiffs are a class of retirees from Raytheon and its predecessor, Hughes Missile Systems, along with their spouses and eligible dependents. Since 1972, Hughes, and later Raytheon, paid insurance premiums for healthcare coverage for early retirees until age 65 pursuant to a series of collective bargaining agreements ("CBAs") with the plaintiffs' union. In 2004, Raytheon limited its contributions to premiums for this insurance and started charging the plaintiffs monthly payments for their healthcare coverage. The plaintiffs sued alleging that Raytheon breached the CBAs and violated the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. The district court concluded that the CBAs obligated Raytheon to continue to pay the premiums and granted summary judgment in favor of the plaintiffs. Raytheon appeals the order granting summary judgment.

In a separate order, the district court granted Raytheon's motion for judgment on the pleadings, concluding that the plaintiffs were not entitled to punitive and extra-contractual damages. The plaintiffs appeal that judgment.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's summary judgment in favor of the

plaintiffs and its judgment on the pleadings in favor of Raytheon.

I

*Background*

The CBAs that apply to the plaintiffs are those adopted in 1990, 1993, 1996 and 1999. Each CBA provided premium-free medical insurance coverage to qualified retirees until they attained the age of 65 years, as well as their spouses and eligible dependents. To qualify, retirees had to be at least age 55 but less than age 65, with five years of continuous employment, and three years of continuous participation in the company retirement plan.

Hughes Missile Systems executed the 1990-1996 CBAs. In 1997, Hughes Missile Systems merged into Raytheon and Raytheon was substituted as the employer in the 1996 CBA. In 1999, Raytheon executed a new CBA that continued to provide retirees with premium-free medical insurance coverage.

The relevant provisions of the 1990-1999 CBAs remained largely unchanged. Each CBA carried a three-year term. For qualifying retirees, Hughes and Raytheon agreed "to continue to provide the Comprehensive Medical Plan coverages for which they were covered while active employees, until the retired employee attain[ed] age 65 . . . ." This promise assured retirees of premium-free medical insurance coverage, because a separate provision of the CBAs obligated Hughes and Raytheon to pay the premiums for the Comprehensive Medical Plan for active employees. Starting in 1993, a provision was added to the CBAs confirming that for retirees "there is no weekly premium/charge" for the Preferred Plan, the Hughes Medical Plan, or an HMO. Raytheon continued to pay the full premiums for retirees until 2004.

In 2003, Raytheon negotiated a new CBA that eliminated its obligation to pay the full medical insurance premiums for retirees. The 2003 CBA obligated Raytheon to pay only a portion of the premiums for retiree medical insurance coverage. Raytheon applied this new agreement retroactively and, in 2004, began charging the plaintiffs monthly payments to keep their medical insurance coverage in force.

## II

### *Continuing Obligation*

As an initial matter, we must decide whether Raytheon's obligation to pay the premiums for retiree medical insurance coverage survived the three-year term of each of the CBAs. We conclude that it did.

**[1]** In general, "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 207 (1991); *see also Poore v. Simpson Paper Co.*, 566 F.3d 922, 927 (9th Cir. 2009). There are exceptions, however, which "are determined by contract interpretation." *Litton*, 501 U.S. at 207. As the Supreme Court has explained:

> Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement. And of course, if a collective-bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration, disputes as to such continuing benefits may be found to arise under the agreement . . . .

*Id.* at 207-08.

**[2]** The CBAs explicitly provided that the retirees' rights to fully paid premiums for medical insurance would continue after the CBAs' expiration. *Id.*; *Poore*, 566 F.3d at 927 ("An

exception to this general rule exists, however, where the parties' dispute concerns a 'right that accrued or vested under the agreement, *or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.*' " (quoting *Litton*, 501 U.S. at 206) (emphasis added)).

**[3]** Hughes and Raytheon expressly agreed to continue to provide premium-free medical insurance coverage for retirees until age 65 notwithstanding the CBAs' three-year terms. *See Litton,* 501 U.S. at 206 (recognizing that "obligations already fixed under the contract but as yet unsatisfied" do not expire with the agreement). Unlike other group coverages in the CBAs, premium payments for retiree medical insurance coverage were not limited to the "term of the agreement."[1] *Compare United Mine Workers v. Brushy Creek Coal Co.*, 505 F.3d 764, 766-67 (7th Cir. 2007) (concluding that retiree benefits, although described as "for life" in one provision of a CBA, were limited to the term of the CBA under a separate provision so stating expressly); *Crown Cork & Seal Co., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers*, *AFL-CIO*, 501 F.3d 912, 917-18 (8th Cir. 2007) (holding that retiree benefits did not vest under a CBA in part because the CBA expressly precluded only "modification for the life of" the agreement).

Retiree medical insurance coverage with premiums paid by Raytheon was not limited to the CBAs' expiration dates by virtue of the general integration clause, which applied the CBAs' term limits to group coverages that did not specify duration.[2] As the district court determined, retiree medical insur-

---

[1]For example, Raytheon agreed to provide retirees over the age of 65 with at least two medicare supplemental insurance plans, but only "during the term of this Agreement."

[2]The integration clause stated that the CBA was "the sole and entire existing agreement between the parties . . . and expressed all obligations of, and restrictions imposed on, the Company and the Union for the period of the Agreement."

ance coverage, with premiums paid by Raytheon, was the only group coverage under the CBAs that supplied a specific duration—"until the retiree attains age 65"—and therefore survived the expiration of the CBAs. *Compare Turner v. Local Union No. 302, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 604 F.2d 1219, 1225 (9th Cir. 1979) (concluding that the CBAs made no "representation as to the length of the period during which [retiree] benefits would continue to be paid, other than 'throughout the term of this agreement' " and therefore "could be terminated at the end of any one [CBA]"); *Int'l Union of United Auto., Aerospace & Agric. Implement Workers of Am. v. Rockford Powertrain, Inc.*, 350 F.3d 698, 705 (7th Cir. 2003) (holding that a company could terminate ongoing retiree health benefits because the "CBA contains no statement regarding the period of time during which retirees would be entitled to benefits").

**[4]** The language of the CBAs makes clear that Raytheon's agreement to pay retiree medical insurance premiums continued beyond the term of the CBAs even where its agreement to pay non-retired employee premiums did not. The CBAs provided retirees with medical insurance coverage "for which *they* were covered while active employees," which was, undisputedly, premium-free.[3] In addition, letters from Raytheon to retirees between 1998 and 2002 support the understanding that retirees and their qualified dependents were "eligible for Company-Paid retiree medical coverage until the age of 65." Thus, Raytheon agreed to continue providing retirees with the same premium-free medical insurance coverage *they* had as active employees, until they turned 65.

**[5]** While Raytheon argues that this promise was merely an

---

[3]Raytheon apparently recognized the significance of this language, as the 2003 CBA revised the language to provide retirees with the "Raytheon Medical Plans available to active employees," not with the same coverage the retirees had had as active employees.

agreement to pay some portion of retirees' medical coverage until age 65, the language of the CBAs supports the plaintiffs' contention that it obligated Raytheon to continue the premium-free coverage that retirees enjoyed as employees. The CBAs provide different retirement benefits to employees who enrolled in the "contributory option" of the Retirement Plan from those who enrolled in the "non-contributory option," and the difference sheds light on the correct interpretation of "Company-Paid." The CBAs exclude from the non-contributory benefit what they alternately called "employer provided medical coverage" and "company-paid medical." Instead, employees opting for the non-contributory benefit were required to "pay the full retiree COBRA Group Premium for the medical plan of benefits in which they are enrolled," if they wished to maintain coverage after retirement. The difference is clear. Retirees who elected the non-contributory benefit pay for their insurance, while retirees who elected the contributory benefit receive the same "company-paid medical" they received as employees until they turn 65.

## III

### *Right to Terminate*

**[6]** The 1990-1999 CBAs each contained a general provision stating that "[a]ll benefits of employees [and] retired employees . . . are subject in every respect to the terms of the applicable Plan documents under which payment is claimed." Raytheon contends that this provision subordinates the CBAs to Raytheon's subsequent ERISA Plans, which purportedly give Raytheon the right to unilaterally revoke its agreement to pay the medical insurance premiums. We disagree.

**[7]** First, while the CBAs contain a general subordination provision, the Plans are likewise restricted by the CBAs. In the 1994 and 1997 Plans, the employer "reserves the right to alter, amend, modify, revoke or terminate in whole or in part

the Plan, except as provided in an agreement with a Collective Bargaining Agent." Thus, because the CBAs specifically provide for company-paid insurance to retirees from age 55 to age 65, the Plans may not be altered to deprive retirees of their company-paid health insurance. The Plans further state in disclaimers regarding the potential future of the Plans that amendment or termination "will not diminish any rights established prior to such amendment or termination."

**[8]** Raytheon tightened the language in its favor in the 1999 and 2003 Plans, expressly reserving "the absolute and unconditional right to terminate the Plan and any and all Benefit Programs, in whole or in part, with respect to some or all of the Employees." However, "employee" is defined in the 1999 and 2003 Plans as a "person performing compensated services for the Employer who meets the definition of 'employee' for income tax withholding purposes under [Treasury Regulation] 31.3401(c)-1." Treasury Regulation 31.3401(c)-1 includes a list of factors to use in distinguishing between employees and independent contractors, not between current and retired employees. *See Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1009 (9th Cir. 1997). Retirees do not reasonably fall within the definition of "employee" used in the Plans. Thus, Raytheon's leeway to amend the Plans does not allow it to alter the terms of the CBAs under which it agreed to provide company-paid health insurance to retirees.

Second, Raytheon's 1999 and 2003 Plans provide that, while amendments can take retroactive effect, "no amendment can reduce benefits accrued as of the date the amendment is approved." Thus, even on the terms of the 1999 and 2003 Plans, Raytheon may not amend the Plans to deprive plaintiffs of premium-free medical insurance coverage.

**[9]** Third, the so-called subordination provision applies to "benefits." It does not apply to contributions or medical insurance coverage. *Cf. Poore*, 566 F.3d at 924 (holding that retiree medical insurance coverage was subject to Plan termi-

nation rights where the CBA provided that "the coverages agreed to in [the] labor agreement" were "[s]ubject to all the provisions of the Benefit Plan Booklet").[4] That "premiums" or "coverages" are not "benefits" of a Plan is clear from the CBAs' language. Under the CBAs, the company "agrees to continue to provide the . . . *coverages* for which [retirees] were covered while active employees, until the retired employee attains age 65 . . . ." The company also "agrees to pay the *premiums* for . . . *coverages* for eligible employees."

"Coverage" does not include, however, the specific "benefits" provided under a plan. Although "coverage" is not specifically defined in the CBA, one CBA provision describes levels of "benefit coverage" as those for an "employee," "employee and spouse," or "employee and child(ren)." These examples suggest that "coverage" refers to how and for whom benefits in general become available, not the specific benefits themselves.[5]

**[10]** Thus, while Raytheon could establish the specific benefits of medical insurance coverage in the Plans, and could terminate those benefits to the extent the Plans permit it to do so, it cannot terminate its agreement to pay the medical insurance premiums it had obligated itself to pay. Whatever termi-

---

[4]Indeed, the other two CBAs at issue in *Poore* clearly specified what the CBAs here do not: "all participants covered by the health care plans will be subject to the same level of contributions as active employees and to the same health care plan provision changes which take effect from time to time." 566 F.3d at 924. Here, only the "benefits" are subject to the Plan terms.

[5]This interpretation is supported by the Plans as well. As Raytheon concedes, the 1994 and 1997 Plans do not even discuss contributions or premiums. And the 1999 and 2003 Plans clearly state that the Plan, which has as its purpose the provision of "certain employee welfare *benefits*," "shall be funded by Employer and Participant *contributions*." (Emphasis added.) The 1999 and 2003 Plans also define 'benefits' as "any payments or services made *under* the Plan," (emphasis added), not the payments made by employees *to* the Plan, if any, to obtain coverage. Thus, the Plans' plain language distinguishes between "benefits" and premium "contributions."

nation rights Raytheon reserved for itself in the Plans with respect to benefits do not apply to Raytheon's existing obligation to provide premium-free medical insurance coverage. *Cf. Brushy Creek Coal*, 505 F.3d at 767 (holding that the Plan terms controlled where the CBA provided that "the specific provisions of the plans will govern in the event of any inconsistencies" between the CBA and the Plans).

Other provisions in the CBAs that incorporate the Plans do not give Raytheon the right to alter its agreement to pay retiree medical insurance premiums. For example, the CBAs provide that "[t]he Retired Employees Medical Benefits will be administered by the Employer in accordance with the provisions of the Comprehensive Medical Plan Document prepared by the Employer." This provision enables Raytheon to administer medical benefits according to the Plans, not terminate or modify its agreement to pay the insurance premiums.

**[11]** Raytheon nevertheless contends that *all* provisions of the CBAs are "subject . . . to" the Plans. And because the Plans allegedly give Raytheon an unfettered right to modify or terminate benefits, Raytheon contends it can revoke *any* plan-related obligation it agreed to in a CBA—even, apparently, an obligation to active employees during the CBA's term. Raytheon's interpretation, however, renders the CBAs illusory. Nothing in the CBAs at issue here enables Raytheon to modify or terminate its obligation to pay medical insurance premiums at any time it pleases simply by saying it can do so in Plan documents governing "benefits." We therefore hold that Raytheon breached the CBAs and violated the Plans, and so affirm the district court's grant of summary judgment on this basis.

IV

*Punitive and Extra-Contractual Damages*

The plaintiffs contend the district court erred in granting Raytheon judgment on the pleadings. By that judgment, the

court rejected the plaintiffs' claims for punitive and extra-contractual damages under the LMRA and their claim for breach of contract.

**[12]** At the outset, the plaintiffs concede that punitive and extra-contractual damages are generally not allowed under the LMRA for breach of a CBA. *See Moore v. Local Union 569 of Int'l. Bhd. of Elec. Workers*, 989 F.2d 1534, 1542 (9th Cir. 1993) ("The general rule . . . is that punitive damages are not allowed in actions for breach of contract under [the LMRA]."); *Desert Palace, Inc. v. Local Joint Executive Bd. of Las Vegas*, 679 F.2d 789, 794 (9th Cir. 1982) ("Generally, the remedy for breach of a collective bargaining agreement is limited to an award of compensatory damages. Ordinarily, an award that exceeds the monetary loss which an injured party suffered as a result of a contract breach is considered punitive."). The plaintiffs, however, contend that there are exceptions to this general rule; a court may award punitive damages if it would deter persistent misconduct and may award extra-contractual damages if the defendant's conduct was particularly likely to result in serious emotional distress.

**[13]** We need not resolve whether such exceptions exist, because the plaintiffs failed to allege sufficient facts supporting their claim for punitive and extra-contractual damages. "Even if we were to conclude that punitive damages are available in appropriate circumstances," the plaintiffs have alleged no facts showing that "the defendants' conduct in this case is . . . sufficiently 'outrageous' or 'egregious' to warrant an award of punitive damages against them." *Wilson v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 83 F.3d 747, 755 (6th Cir. 1996).

V

*Conclusion*

**[14]** Raytheon expressly agreed to continue to pay premiums for medical insurance for the plaintiffs until retirees and

their spouses became 65 years of age. Raytheon's agreement survives the expiration of the CBAs and cannot be unilaterally terminated by Raytheon regardless of the rights Raytheon reserved for itself in other Plan documents. The district court did not err in rejecting the plaintiffs' claim for punitive and extra-contractual damages.

We affirm the district court's summary judgment in favor of the plaintiffs. We also affirm the district court's judgment on the pleadings in favor of Raytheon.

**AFFIRMED**.