┌─────────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 8, 2018
Decided August 28, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 17-3095

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 14-CR-00539-12 |
| JOSE SANANTONIO, *Defendant-Appellant*. | Andrea R. Wood, *Judge*. |

**O R D E R**

Police stopped Jose Sanantonio as he was transporting money from drug sales for the Sinaloa drug cartel. He eventually told the officers that he had delivered money before under similar circumstances. Later he pleaded guilty to conspiring to commit money laundering. *See* 18 U.S.C. § 1956(h). At sentencing, the district judge found that (1) Sanantonio obstructed justice by lying at a pretrial hearing about not having received his *Miranda* rights before speaking with law enforcement, and (2) his prior deliveries were relevant conduct to his offense. Sanantonio contests those findings. Because the judge sufficiently supported her perjury finding, and Sanantonio's statements about his conduct were reliable, we affirm the judgment.

## I.

Jose Sanantonio was a courier for the Sinaloa cartel, a Mexico-based money laundering organization that laundered $100 million from drug proceeds between 2011 and 2014. For about one year, his role in the conspiracy was to receive, store, and deliver money to others who, according to the government, purchased and resold gold for cash that then was sent to Mexico. Police stopped Sanantonio as he was driving to deliver $100,000 in cash to an undercover agent in the parking lot of a shopping mall in Joliet, Illinois. He then led police to another $122,000 at his house.

After seizing the money in his possession, the officers took Sanantonio to the police station, where he signed a waiver of his *Miranda* rights and described his involvement in the conspiracy. As summarized in an Immigration and Customs Enforcement report, Sanantonio admitted to the police that co-conspirators gave him bags of cash containing an additional $344,000 to store and transfer. From that stash, he made three separate deliveries: (1) $77,000 to $78,000 to an unknown man at Joliet Mall, (2) $120,000 to a man at a restaurant near O'Hare International Airport, and (3) $50,000 to another unknown man at a restaurant near an outlet mall in Aurora, Illinois. (We note a discrepancy between how much cash Sanantonio said he received and stored and how much he said he delivered, but he does not argue that this discrepancy undercuts the judge's finding of his relevant conduct.)

After he was indicted by a grand jury, Sanantonio learned that police were "unable to locate" the signed *Miranda* waiver, and he moved to suppress the statements about his involvement in the conspiracy. At the suppression hearing, Sanantonio testified at least six times (responding to repeated questions from his lawyer) that law enforcement never read him his *Miranda* rights. He also narrated in detail his interaction with police, including their refusal to read him his rights. Before the judge ruled on the motion to suppress, however, the government located Sanantonio's signed waiver. Sanantonio promptly withdrew his motion and pleaded guilty.

The district judge sentenced Sanantonio below the Guidelines to 96 months' imprisonment. She first determined that his conduct involved $566,000—the $222,000 in cash that police found plus the $344,000 that Sanantonio told police that he had received. Sanantonio described an "ongoing kind of arrangement," she explained, and the "significant amount of detail" in his statement to police established its reliability. The judge then found that Sanantonio committed perjury at the suppression hearing, and she applied a two-level increase under the Sentencing Guidelines for obstructing justice. *See* U.S.S.G. § 3C1.1 & cmt. 4(B). She characterized Sanantonio's testimony at the

hearing as a lie, and clarified that there was "nothing to suggest that faulty memory was the issue here." In one exchange with the government, she explored whether Sanantonio's lie regarded a "collateral issue" that was "unrelated to the substance of the offense," but concluded that "there have to be repercussions to the impact that [false testimony] has on … the implementation of justice."

## II.

On appeal, Sanantonio first challenges the judge's application of the obstruction enhancement, contending that the judge erroneously found that he committed perjury. A defendant commits perjury when he gives "false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Sanantonio argues that the judge did not make the requisite findings for perjury: she did not find that his false testimony was material or that he willfully testified falsely.

We conclude that the judge made a sufficient materiality finding, though we acknowledge that her discussion of materiality could have been more robust. Evidence is material when, "if believed, [it] would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. 6; *United States v. Riney*, 742 F.3d 785, 790 (7th Cir. 2014). A lie calculated to influence a pretrial issue is material because it will influence the outcome of the case. *See United States v. DeLeon*, 603 F.3d 397, 403–04 (7th Cir. 2010); *United States v. Galbraith*, 200 F.3d 1006, 1015 (7th Cir. 2000). The judge did not say much on this topic—that the lie affected "the implementation of justice"—but that explanation was enough. Sanantonio's false testimony led to a needless hearing about the admissibility of critical evidence. *See Riney*, 742 F.3d at 790–91. And had the judge believed Sanantonio's lie that he did not receive *Miranda* warnings, then she would have suppressed the evidence of relevant conduct, affecting his sentence. In this context, her perjury finding "encompass[ed]" her materiality finding. *United States v. Savage*, 505 F.3d 754, 763 (7th Cir. 2007) (quoting *Dunnigan*, 507 U.S. at 95).

Given the brevity of the judge's statement, we think that the following point bears repeating: "District judges should continue to follow *Dunnigan* and our other case law which require particular findings for the obstruction enhancement based on perjury." *United States v. Chychula*, 757 F.3d 615, 622 (7th Cir. 2014). But even though we prefer that the judge would have made a more complete finding on materiality, she said enough that remand is not warranted. *See Savage*, 505 F.3d 764.

Sanantonio argues that when the judge characterized the lie as potentially concerning only a "collateral issue," the judge actually *found* it immaterial. But the judge did not make a materiality finding that the lie was a "collateral issue." Rather, she used that phrase while asking the government: "Does it matter at all that the lie was about … a collateral issue." Her question was not a finding, but part of a "thorough and deliberate consideration" of the materiality issue, *United States v. Nichols*, 847 F.3d 851, 859 (7th Cir. 2017), supporting her eventual and accurate conclusion that the lie was material.

The judge also made an adequate finding that Sanantonio's false statement was willful. Sanantonio's lawyer referred to the *Miranda* warnings in at least six questions, and each time Sanantonio denied ever having received them. The judge referred to Sanantonio's statement as a "lie," and lies are willful. *United States v. Mbaye*, 827 F.3d 617, 621 (7th Cir. 2016). Willfulness requires more than "confusion, mistake, or faulty memory," *Dunnigan*, 507 U.S. at 94, and here the judge explained that, given the details that Sanantonio provided about his interaction with police, there was "nothing to suggest that faulty memory was the issue."

Sanantonio argues last that the judge erred in her relevant-conduct analysis by relying on his station-house statements, which were summarized in the report from Immigration and Customs Enforcement. In light of those statements, she found him responsible for laundering $566,000 ($344,000 more than the $222,000 that police found in his possession), and she increased his offense level by 14 (instead of the 10 that would correlate to $222,000), *see* U.S.S.G. § 2B1.1(b)(1)(F), (H). He says that his statements do not show that the additional $344,000 was part of the charged conspiracy, and he argues for the first time on appeal that the report is unreliable because it lacks corroboration.

The evidence on which the judge relied to determine Sanantonio's relevant conduct was sufficiently reliable. Findings of relevant conduct must be supported by the preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 156–57 (1997); *United States v. Thurman*, 889 F.3d 356, 370 (7th Cir. 2018). The judge relied on Sanantonio's own statements, and because they were consistent with other evidence in the record, they did not require more corroboration. *See United States v. Tankson*, 836 F.3d 873, 882–83 (7th Cir. 2016); *United States v. Johnson*, 342 F.3d 731, 734 (7th Cir. 2003). Sanantonio's account also was detailed—he discussed how much money he delivered, where, and to whom—and detail shows reliability. *See Tankson*, 836 F.3d at 882–83; *United States v. Sandidge*, 784 F.3d 1055, 1062 (7th Cir. 2015). Moreover, he described an arrangement that was ongoing, so it follows that the money he disclosed

to police related to the money police found in his car and home. Finally, the ICE report summarizing his statement to the police of an ongoing arrangement is reliable because it is corroborated by Sanantonio's admission in his plea declaration that he was involved with the conspiracy for about one year. Therefore, the report had sufficient indicia of reliability for the judge to credit it. *See Thurman*, 889 F.3d at 370–71 (no clear error when judge credited testimony corroborated by defendant's admission).

For the foregoing reasons, the judgment of the district court is AFFIRMED.