In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 07-2959

ROGER KNUTSON,

*Plaintiff-Appellant*,

*v.*

UGS CORP. and SDRC (STRUCTURAL DYNAMICS
    RESEARCH CORPORATION),

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:05-cv-1319—**Sarah Evans Barker**, *Judge*.

_____

ARGUED FEBRUARY 27, 2008—DECIDED MAY 13, 2008

_____


Before EASTERBROOK, *Chief Judge*, and POSNER and
WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff brought this diver-
sity suit (governed by Indiana law) to recover almost
$700,000 in sales commissions that he claims are due
from the two defendants, a firm and its successor both of
which we refer to as the plaintiff's "employer." The dis-
trict court granted summary judgment for the employer.

The plaintiff seeks commissions on three sales or sets
of sales; we shall, again for the sake of brevity, pretend

that there were just three sales. The first two the judge held barred by the statute of limitations; the plaintiff contends that the judge applied the wrong one. Indiana has a two-year statute of limitations (the one the judge applied) for "an action relating to the terms, conditions, and privileges of employment *except actions based upon a written contract* (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary)." Ind. Code § 34-11-2-1 (emphasis added). Although the plaintiff did not have a written *employment* contract, his entitlement to commissions was based on a written compensation plan, and it is a breach (or rather breaches) of that plan, which he characterizes as a written contract, that he charges; and so he argues that the applicable statute of limitations is Indiana's 10-year statute of limitations for "an action upon contracts in writing." Ind. Code § 34-11-2-11. If he is right, the claim based on the first two sales are not time-barred (the claims arose in 2001, and the suit was filed in 2005); if the judge is right, they are.

In a literal sense, the plaintiff's suit is "based upon a written contract," but the Indiana Court of Appeals has held that "written contract" in the two-year statute of limitations means written *employment* contract. *Kemper v. Warren Petroleum Corp.*, 451 N.E.2d 1115 (Ind. App. 1983); see also *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705-06 (1966) (Indiana law); *Miller v. International Harvester Co.*, 811 F.2d 1150 (7th Cir. 1987) (same); *International Union of Elevator Constructors v. Home Elevator Co.*, 798 F.2d 222, 229-30 (7th Cir. 1986) (same); *State v. Puckett*, 531 N.E.2d 518, 526 (Ind. App. 1988); *Peake v. International Harvester Co.*, 489 N.E.2d 102, 105 (Ind. App.

1986). This interpretation makes sense because the terms of the oral employment relation out of which the claim of breach of a separate written contract arises will often be relevant to that claim, making it much like a case in which the contract sued upon is partly written and partly oral. The shorter statute of limitations is applied to such claims, *Michael v. Rainier*, 205 N.E.2d 543 (Ind. 1965); *Citizens Progress Co. v. James O. Held & Co.*, 438 N.E.2d 1016, 1021-22 (Ind. App. 1982), because they fall outside the justification for the longer statute of limitations applicable to suits on a written contract; the justification is that the evidence is unlikely to become stale with time because most contract suits are resolved just by the judge's reading the contract. The difference in treatment between a written contract on the one hand and a part-written, part-oral contract on the other is not entirely clear cut because oral evidence is sometimes admissible in a suit on an entirely written contract, as we shall see; but it makes some sense.

The compensation contract on which the plaintiff's claim to commissions is based is limited to employees. Yet the contract does not state that the plaintiff is (or rather was, during the period relevant to the lawsuit) an employee. The contract contains no space for signatures, but is merely a statement of terms; so if one wanted to be hypertechnical one could say that the contract itself was an oral adoption of the terms stated in what is captioned "Compensation Program for the SDRC Field Organization." There is no doubt that the plaintiff was an employee during the relevant period. But in other cases there could be doubt dispellable only by recourse to extrinsic evidence (that is, evidence outside the writing itself), and then a 10-year statute of limitations would be too long.

There is, moreover, a tradition of short statutes of limitations in employment cases. See, e.g., Title VII, 42 U.S.C. § 2000e-5(e)(1) (180 days, in some states 300 days, to file a charge with the EEOC, 90 days to sue after the EEOC dismisses charge); Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(d), (e) (same); National Labor Relations Act, 29 U.S.C. § 160(b) (six months to sue); Fair Labor Standards Act, 29 U.S.C. § 255(a) (two years to sue). The reasons are to limit the employer's uncertainty about the composition of his work force and his exposure to claims for backpay, which would continue to mount up until the judgment if the plaintiff could not find an equivalent job; and to facilitate reinstatement. These particular concerns are not present in this case, but another is—the desirability of heading off vendettas by disgruntled former employees. An employee should not be encouraged to spend 10 years threatening suit against his former employer; he should get on with his life.

And finally a plaintiff who needs an adventurous interpretation of state law to prevail should sue in state court rather than in federal court. *Doe v. City of Chicago*, 360 F.3d 667, 671-72 (7th Cir. 2004); *Chang v. Michiana Telecasting Corp.*, 900 F.2d 1085, 1087-88 (7th Cir. 1990); *Veilleux v. National Broadcasting Co.*, 206 F.3d 92, 131 (1st Cir. 2000); *Witzman v. Gross*, 148 F.3d 988, 991 (8th Cir. 1998); *In re C-T of Virginia, Inc.*, 958 F.2d 606, 611-12 (4th Cir. 1992); *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 n. 12 (5th Cir. 1988). The best evidence of Indiana law, in light of the cases and our analysis, is that the two-year statute of limitations applies. A change in that law can come only from the Indiana courts. So, since that is what the plaintiff needs, he should have sued in those

courts. Had he done so, the defendants might have re-moved the case to federal district court; they could do so because they are citizens of states other than Indiana. But they might not have done so, and then the case would have remained in the state courts, which is where a case in which the plaintiff seeks a change in state law should remain.

The claim based on the third sale is not time-barred. It is based on a provision in the compensation contract entitling the plaintiff to specified commissions on "NX Nastran Software and related PLM CAE Software sales." The plaintiff argues that the two types of software are "related" and therefore he is entitled to commissions on all sales of PLM CAE software that he assisted in making. The employer argues that the plaintiff is entitled only to commissions on PLM CAE software that was sold simultaneously with NX Nastran. The district judge sided with the employer after ruling that "related" was ambiguous but that the ambiguity was "patent" and that extrinsic evidence may not be admitted to dissolve such an ambiguity.

The judge erred. As explained by Francis Bacon more than 400 years ago, an ambiguity is "patent" when it is recognized as an ambiguity just by reading the docu-ment; it is latent when it is not recognized as an ambiguity until you know something outside the contract. Bacon, *A Collection of Some Principal Rules and Maximes of the Common Law* 90-91 (1597); *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 543 (7th Cir. 2000); *Texas v. American Tobacco Co.*, 463 F.3d 399, 409 (5th Cir. 2006); *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994); 11 *Williston on Contracts* § 33:40 (2007 Supp., 4th ed., Richard A. Lord ed.). A contract that provides for

shipping cotton on the ship *Peerless* is not ambiguous on its face, but there is a latent ambiguity if there is more than one ship by that name to which the contract might (if all you know is what the contract says) refer. *Raffles v. Wickelhaus*, 2 H. & C. 906, 159 Eng. Rep. 375 (Ex. 1864). A latent ambiguity thus presupposes that extrinsic evidence has been introduced—you need such evidence to establish the ambiguity. A patent ambiguity leaps out at the reader from the contract, and requires recourse to extrinsic evidence to dispel. *University of Southern Indiana Foundation v. Baker*, 843 N.E.2d 528, 532-33 (Ind. 2006); *Rossetto v. Pabst Brewing Co.*, *supra*, 217 F.3d at 543.

The court in the *Baker* case said that since extrinsic evidence is admissible whether the ambiguity is patent or latent, the distinction is erased. But that is not correct, in view of decisions that require that evidence used to create a latent ambiguity must be objective third-party evidence rather than self-serving testimony of a party, as otherwise the protection that parties obtain from the vagaries of juries by putting their contracts in writing would evaporate. E.g., *Rossetto v. Pabst Brewing Co.*, *supra*, 217 F.3d at 542-43; *AM Int'l, Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572, 575 (7th Cir. 1995).

All this is rather to one side of this case because it is plain without extrinsic evidence (more precisely, without the extrinsic evidence beyond what has crept into the case and has not been contested) that "related" cannot bear the meaning the plaintiff ascribes to it, though the employer is off-base too. The employer thinks "related" means "connected" in almost a literal sense. It need not. If you ask someone to buy you a rake and any *related* tools, he is asking you to buy items from a set to which the specified item belongs, whether or not you plan to use

them together. So at the oral argument of the appeal we asked the plaintiff's lawyer whether NX Nastran is included in the set of PLM CAE software programs, and he said it was not. NX Nastran is a data-management tool. CAE (computer assisted engineering) refers to software for drawing engineering devices. CAE uses data furnished by data-management tools such as NX Nastran, but that is like saying that a hammer uses nails; a nail is not therefore a hammer, the way a rake is a tool.

The plaintiff was supposed to assist in selling NX Nastran, a new product, but he was offered a bonus commission if he sold PLM CAE programs (also made by the employer) to go along with the NX Nastran, in much the same way that an automobile salesman might get an extra commission for persuading a customer to buy a 30-speaker audio system as an accessory for his new car. The employer didn't want the plaintiff spending his time selling PLM CAE programs that would not be used with NX Nastran. That does not mean it wouldn't give him the extra commission if he sold the customer NX Nastran on Monday and the PLM CAE to go with it on Tuesday, as the employer argues. But the plaintiff does not claim to have been denied the extra commission in any case in which the PLM CAE was bought for use in conjunction with NX Nastran that he had sold the customer.

There is a further point. NX Nastran could not be used without PLM CAE, so to sell NX Nastran the plaintiff would *have* to sell PLM CAE with it, and this would generate additional revenue for the employer and so entitle the plaintiff to additional compensation. But PLM CAE is usable without NX Nastran, so if the plaintiff pushed PLM CAE programs that would not be used

with NX Nastran he wouldn't be helping to sell NX Nastran, which was supposed to be the focus of his sales efforts.

So the claim has no merit, and the other claims, as we said, are time-barred. The judgment is therefore

AFFIRMED.