**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2022
Decided August 11, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

Nos. 21-3254 & 21-3324

| | |
|---|---|
| JOHN COCQUYT, | Appeals from the United States District |
| *Plaintiff-Appellee/Cross-Appellant,* | Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:19-CV-933-PPS |
| SPARTANNASH COMPANY & MARTIN'S SUPER MARKETS, INC., | Philip P. Simon, *Judge*. |
| *Defendants-Appellants/Cross-Appellees.* | |

**O R D E R**

This appeal arises out of a severance-payment dispute between John Cocquyt and his former employer. When Cocquyt began working as an executive for the company, he signed a three-year contract that contemplated that his employment "may be terminated" within the three-year term. "If, and only if," such a termination occurred within one year of a change in ownership, Cocquyt was entitled to twice his annual salary. SpartanNash Company bought the business during the three-year term. About

eight months later—but after the three-year term had ended—it fired Cocquyt. Cocquyt sued for breach of contract, asserting that although his three-year term had ended, he deserved the severance because SpartanNash fired him within a year of buying the company. After a bench trial, the district judge entered judgment for Cocquyt, awarding him roughly $500,000 in damages but no prejudgment interest.

Both sides appeal. SpartanNash challenges the judgment against it, contending that under the contract's plain language, SpartanNash did not owe Cocquyt severance pay because it fired him after the three-year term had expired. Cocquyt also appeals, challenging the denial of prejudgment interest. Because we agree with SpartanNash that the contract unambiguously states that the severance pay is owed to Cocquyt only if he is fired within the contract's three-year term, we reverse the judgment.

## I. Background

Cocquyt and Martin's Super Markets entered into a three-year employment contract in August 2016. Cocquyt was leaving a stable, executive-level position with a national company, and he feared that his new regional employer might soon sell to another company; he therefore negotiated terms to ensure job stability. The contract set an initial three-year term. It warranted that if Cocquyt was discharged before the end of that term and within one year of a change of ownership, the company would pay him a severance of twice his yearly salary. Unless either party gave notice within 60 days of the end of the term of no intent to renew, the contract would renew for additional one-year periods. We provide these provisions here:

> **1. Employment.**
>
> **Term**. … [T]he Employee hereby accepts full-time employment with the Company for a term beginning on August 29, 2016, and continuing for a period of three (3) years (the "Term"). This agreement may be terminated prior to the end of the Term … [as] provided for in Section 5 below.
>
> … .
>
> **5. Termination; Rights on Termination.** Employee's employment may be terminated in any one of the following ways, prior to the expiration of the Full-Time Term:

… .

> (e) *Change of Control*. If, and only if, the Employee is terminated within twelve (12) months after a change of control, … then, and in that event Employee shall receive from the Company an amount equal to two (2) times Employee's Base Salary in effect for the calendar year immediately preceding the calendar year in which his termination of employment occurs … . Such payments are to begin within thirty (30) days of the date of severance and be made over an eighteen (18) month period, … and Employee shall not be required to comply with [the contract's non-compete agreement].
> … .

> **10. <u>Extension of Agreement</u>.** Unless earlier terminated pursuant to Paragraph 5 and unless either Employee or Company gives notice … not to renew this Agreement at least sixty (60) days prior to the end of the … term, if Employee is employed by the Company at the end of the … term, then this Agreement shall be automatically extended from year to year thereafter … .

SpartanNash acquired Martin's Super Markets in December 2018, about eight months before the end of Cocquyt's initial three-year contract. SpartanNash continued Cocquyt's employment through the end of that term and gave Cocquyt the required 60-day advance notice that it would not renew the contract. It discharged Cocquyt on August 31, 2019. This was two days after the contract's three-year term had expired, but less than one year after SpartanNash acquired the company. (SpartanNash offered Cocquyt six months of severance pay—approximately $131,000—which Cocquyt refused.)

Cocquyt sued SpartanNash and Martin's Super Markets in Indiana state court for breach of contract. He contended that under section 5(e)—the "change of control" provision—he should collect twice his salary as severance (and be freed from the noncompete agreement) because he was fired within one year of a change in control. SpartanNash removed the case to federal court and sought summary judgment. It

argued that the severance right in section 5(e) is limited by the first sentence of section 5, which applies to a termination made "prior to the expiration of the Full-Time Term" of the Agreement. Because the contract defines this "Term" as the initial three-year contract, SpartanNash argued that section 5(e) did not apply after that period ended.

The judge denied the motion for summary judgment. He ruled that the contract was ambiguous about whether the change-of-control provision applied only if the termination occurred within the contract's three-year term. When read by itself, the judge thought that section 5(e) seems to say that Cocquyt was entitled to twice his salary if fired within one year of a change in control, even if that discharge occurred *after* the contract's three-year term. On the other hand, the court continued, if section 5(e) is read alongside the opening sentence of section 5, it seems to describe Cocquyt's rights if he is fired *during* the contract's initial three-year term. Further, the judge thought that if section 5(e) applied only within the contract's initial three-year term, then it rendered another section—section 5(d)—superfluous. That section provided that if "the Company" (defined as Martin's Super Markets) fired Cocquyt without cause, he would receive severance equal to twice his annual salary. The judge concluded that a trial was needed to resolve the ambiguity and these issues.

After a two-day bench trial, the judge entered judgment for Cocquyt. The judge heard testimony from Cocquyt and the former CEO of Martin's Super Markets, who negotiated the contract. Each said that when entering into the contract, each wanted Cocquyt to receive his severance if he were fired within one year of a change of control, even if the discharge occurred after the contract's three-year term. Based on this testimony about their subjective intent, the judge concluded that SpartanNash breached the contract and ordered it to pay Cocquyt $524,000 in damages, which included his full severance and postjudgment interest at a rate of 0.16%. The judge denied prejudgment interest because that amount was not easily calculated and, thus, was unwarranted.

## II. Analysis

SpartanNash appealed the judgment. Cocquyt cross-appealed, challenging the denial of prejudgment interest.

SpartanNash contends that the contract unambiguously denies Cocquyt any severance when, as here, he is fired after the initial three-year term. In its view all of

section 5—including the change-of-control provision in section 5(e)—describes Cocquyt's rights upon termination *during* the initial three-year term. Because SpartanNash fired Cocquyt *after* this three-year term was over, SpartanNash did not need to pay Cocquyt twice his salary as severance. We review de novo a district court's determination of whether a contract is ambiguous. *Aeroground, Inc. v. CenterPoint Props. Tr.*, 738 F.3d 810, 813 (7th Cir. 2013).

We agree with SpartanNash that the contract unambiguously does not entitle Cocquyt to the severance. When interpreting a contract, Indiana law requires a judge to "examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017). We thus begin with Section 5's first sentence. It states that Cocquyt's employment "may be terminated in any one of the following ways, *prior to the expiration of the Full-Time Term*." (Emphasis added.) "Term" is defined as the initial "period of three (3) years." Section 5(e) adds that if the employment termination, so defined as occurring within the first three years, also occurs within one year of a change of control, Cocquyt receives the two years of severance. Thus, Cocquyt's discharge, which occurred two days after the end of the three-year term, albeit within one year of change of control, did not entitle him to two years of pay.

Construing section 5(e) to apply only during the three-year term does not render the provision for termination without cause in section 5(d) superfluous as the judge believed it would. Section 5(d) states that if "the Company"—defined as Martin's Super Markets—fires Cocquyt without cause during the three-year term, he is entitled to twice his salary. By contrast, section 5(e) covers severance if, after a change in control, Cocquyt is fired by another entity. Moreover, the benefits in section 5(d) are different. The severance under section 5(d) is paid in 24 equal monthly payments. As SpartanNash observes, section 5(e) provides for a quicker payout (18 months instead of 24) and release from the noncompete agreement. Thus, because these sections provide different rights, neither is superfluous even if each applies only during the three-year term.

Cocquyt resists this interpretation of section 5(e), giving three reasons, but none persuades us. First, he points to the phrase "If, and only if" at the start of the change-of-control provision of section 5(e). (The full sentence is: "If, and only if, the Employee is terminated within twelve (12) months after a change of control, … then and in that

event Employee shall receive from the Company an amount equal to two (2) times Employee's Base Salary … .") In Cocquyt's view the "only" precondition for receiving severance under this section is if he is fired within one year of a change in control; the discharge need not occur within the three-year term. But the word "only" works *against* Cocquyt's claim. In conjunction with the first sentence of section 5, this word emphasizes that the "only" way he gets the speedy 18-month payout of two years of severance and release from the noncompete agreement is if he is fired before the end of three years and within one year of a change in control.

Second, Cocquyt contends that the change-of-control provision, unlike the other subsections in section 5, explicitly applies for 12 months after a change in control and thus might outlast the initial term. But as revealed elsewhere in the contract, the parties knew how to express when they definitively wanted a provision to survive the initial three-year term. Section 6—the contract's noncompete provision—expressly states, for example, that it applies "[d]uring the Term, and thereafter." Nothing in the language of section 5(e) states that it, like section 6, outlasts the three-year term.

Third, Cocquyt maintains that evidence at trial showed that when SpartanNash acquired Martin's Super Markets, it treated the contract as entitling Cocquyt to his severance if it fired him in a year, regardless of when his term ended. But Cocquyt misrepresents this trial evidence. The evidence showed that SpartanNash accepted that the contract required it to pay Cocquyt a severance if it fired him within a year of acquisition *and* within the three-year term. Internal e-mails from SpartanNash show it planned to fire him on August 31, 2019, precisely because by that date Cocquyt's three-year contract term was over and SpartanNash believed it no longer owed him the severance.

Because the contract's terms (and SpartanNash's conduct) unambiguously contradict Cocquyt's claim, the judge should not have received extrinsic evidence. Although neither side raises the point, we note that when considering extrinsic evidence to interpret an ambiguous contract, a judge generally should consider only objective evidence of the parties' intended meaning; a judge should "never consider[] either side's private thoughts and hopes." *Kunkel v. Comm'r*, 821 F.3d 908, 910 (7th Cir. 2016). Here, however, the judge appears to have relied on Cocquyt and the former CEO's testimonies about their subjective intent for the contract rather than objective evidence. *See Knutson v. UGS Corp.*, 526 F.3d 339, 342 (7th Cir. 2008) (applying Indiana law and stating the necessity of objective evidence to resolve latent ambiguities in a

contract); *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006) (relying on extrinsic evidence such as contemporaneous notes from the contract drafter and affidavits from third parties attesting to the parties' spoken intent); *Higgins v. State*, 855 N.E.2d 338, 342 (Ind. Ct. App. 2006) (using industry practice as a form of objective evidence).

On SpartanNash's appeal, we REVERSE the judgment and remand with instructions to enter judgment for SpartanNash. Because Cocquyt is not entitled to the two years of severance, we need not consider whether the judge also erred by not awarding him prejudgment interest.

REVERSED